UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
FEB -1 2017
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) |
| v. | ) )   4:17CR052 HEA/JMB |
| MATTHEW BURKETT, | ) ) |
| Defendant. | ) ) |

## INDICTMENT

### COUNT I

The Grand Jury charges that:

**BACKGROUND**

At all times relevant to this Indictment:

1. Predator Tactical, LLC (Predator) was a business involved in the manufacturing of custom and high-end firearms. It was registered by Matthew Burkett (BURKETT) in March 2010 and operated out of a location in Tempe, Arizona. BURKETT was the president and majority owner of the company.

2. Predator sought business across the United States and overseas by advertising on the internet, in trade specific publications, and by attending various gun shows across the United States.

**THE SCHEME**

3. Beginning no later than April 2012 and continuing until the present, in the Eastern District of Missouri, and elsewhere,

**MATTHEW BURKETT,**

the Defendant herein, did knowingly devise and execute a scheme to defraud and to obtain moneys and funds by means of materially false and fraudulent pretenses, representations, and promises.

    a. It was part of the scheme that Predator, and BURKETT in particular, represented through advertising and directly to potential customers that Predator would complete manufacturing of firearms within 90 days of order and payment.

    b. It was part of the scheme that BURKETT would require full payment from the customer at the time of order.

    c. It was part of the scheme that BURKETT would misappropriate customer payments for his personal benefit without attempting to fulfill the customer's order.

    d. It was part of the scheme that when customers complained about not receiving firearms for which they paid, BURKETT would falsely promise that manufacture of the firearms would soon be completed.

    e. It was part of the scheme that BURKETT would seek cash infusions to aid Predator through loans or investors, with false promises of repayment or profit.

    f. It was part of the scheme that BURKETT would use the loans or investments for personal use rather than for the intended purpose of investment in Predator.

**EXECUTION OF THE SCHEME**

4. On or about April 13 through 15, 2012, BURKETT, representing Predator Tactical, attended the NRA gun show in St. Louis, Missouri. At the show, BURKETT advertised and marketed Predator Tactical to the show attendees, including J.L. and P.S.

5. **J.L.**

a. On or about February 12, 2013, and based in part on the representations BURKETT made at the gun show, J.L. ordered and paid a $1,000 deposit on a Predator Tactical "night shrike" pistol. J.L. paid for the pistol by credit card. BURKETT represented that it would take 6 months to have the pistol delivered to J.L.

b. On or about February 15, 2013, J.L. paid the remaining balance of $2,576.99 on the pistol by credit card.

c. After receiving J.L.'s payment, BURKETT utilized the funds to make personal expenditures and deposited the remainder into a personal account. None of J.L.'s payment went into a business account.

d. On or about May 3 through 5, 2013, J.L. met with BURKETT in Houston, Texas. BURKETT falsely told J.L. that manufacturing of J.L.'s pistol was nearly complete and that J.L. would receive his pistol in a couple of weeks, when in fact no work had even begun on the pistol.

e. On or about May 12, 2014, J.L., through an attorney, mailed BURKETT a demand for the ordered pistol, or a full refund; or exchange for another product. BURKETT, in response to the above letter, telephoned J.L. and falsely promised that Predator Tactical would deliver the "night shrike" pistol in a couple of weeks. However, BURKETT didn't initiate manufacture, and J.L. didn't receive his pistol until after BURKETT became aware that he was being investigated by law enforcement.

3

6. **P.S.**

   a. On or about July 11, 2012, and based in part on the representations BURKETT made at the St. Louis gun show, P.S. ordered and paid a $21,653 deposit on five 1911-style pistols. P.S. paid by check which he mailed from St. Louis to BURKETT in Arizona.

   b. On or about July 13, 2012, P.S. mailed a check from St. Louis to BURKETT in Arizona for the remaining balance of $11,488 on the 1911-style pistols.

   c. On or about July 21, 2012, BURKETT met with P.S. in St. Louis, Missouri.

   d. On or about July 25, 2012, BURKETT and P.S.'s company entered into an agreement by which P.S.'s company (Company A) would advance $50,000 to Predator as a deposit for future purchases or, alternatively, as an investment option toward purchasing Predator stock at P.S.'s sole discretion.

   e. On or about July 25, 2012, P.S. caused his bank to wire $50,000 on July 26, 2012 from Company A's account in St. Louis to Predator's bank account in Arizona.

   f. On or about December 4, 2012, having decided not to exercise his option to purchase Predator stock, P.S. ordered a list of firearms purchased by the $50,000 deposit. The firearms were to be delivered at a rate of one per month with the first weapon delivered by February 28, 2013. However, BURKETT has not delivered any of the firearms he promised to P.S.

**THE CHARGE**

7. On or about July 26, 2012, in the Eastern District of Missouri,

**MATTHEW BURKETT,**

4

the Defendant herein, having devised and intending to devise a scheme and artifice to defraud, and obtain money and property by means of material and false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme to defraud did cause P.S. and PNC Bank in St. Louis, Missouri to transmit by means of wire in interstate commerce, writings, signs, signals, and pictures to Wells Fargo in Arizona, to wit: the wire transfer of $50,000.

In violation of Title 18, United States Code, Section 1343.

A TRUE BILL.

_____
FOREPERSON

RICHARD G. CALLAHAN
United States Attorney

_____
JOHN J. WARE, #40880MO
Assistant United States Attorney